IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Angelo Ham, ) | Civil Action No. 6:10-3058-JMC-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Anthony J. Padula, et al., ) | |
| ) | |
| Defendants ) | |

This matter is before the court on the defendants' motions for summary judgment (docs. 38, 64). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) DSC, this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

## BACKGROUND

The plaintiff is currently incarcerated in the Special Management Unit ("SMU") at Lee Correctional Institution ("LCI"), a facility managed by the South Carolina Department of Corrections ("SCDC"). All individually named defendants were SCDC employees at the time of the allegations contained in the plaintiff's amended complaint. The plaintiff filed his original complaint on December 2, 2010 (doc. 1). On January 3, 2011, the plaintiff filed an amended complaint (doc. 17). The defendants filed an answer and answer to amended complaint on February 14, 2011 (docs. 23, 24).

On March 31, 2011, defendants Brooks, McDonald, Ozmint, Padula, Rabon, Simon-Bracey, Sims, and Williams filed a motion for summary judgment (doc. 38). On April

1, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. On April 13, 2011, this court granted the plaintiff's unopposed motion to amend (doc. 34) in which he sought to correct the spelling of defendant Sandra Simon-Bracey to Sandra Bracey-Simon and defendant Debra Sims to Debra Whitney. On May 10, 2011, defendants Bracey-Simon and Whitney joined in the previously filed motion for summary judgment (doc. 64). Another *Roseboro* order was issued on May 10, 2011. The plaintiff filed his response in opposition to both dispositive motions on June 21, 2011, and the defendants filed a reply on July 1, 2011.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific,

material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The plaintiff brings this action alleging violations of his constitutional rights while incarcerated at LCI in the SMU. The plaintiff alleges: (1) he was denied reading materials, which violated his due process and freedom of expression rights under the First, Fifth, and Fourteenth Amendments to the Constitution, and (2) the defendants were deliberately indifferent to his medical needs. Summary judgment is appropriate on each of these claims as discussed below.

***SMU Policy Regarding Access to Books***

The plaintiff alleges that he ordered a book from the Georgetown University Law Center to be delivered to his cell in the SMU. The book was refused by the LCI mailroom and marked "return to sender" due to the plaintiff's housing assignment in the SMU. The plaintiff alleges that the SMU policy restricting access to books for SMU inmates to those available from Library Services violates his First Amendment rights.[1] The plaintiff

---

[1]To the extent the plaintiff alleges his due process rights were violated by the returning of the book to the publisher, this claim should be dismissed. The "Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property – even if the loss was caused by a state employee, an employee of a state agency, or an employee of a political subdivision of a state." *Meyer v. Miro*, C.A. No. 4:01-4260-25BH, 2003 WL 23198856, at *11 (D.S.C. 2003) (citing *Yates v. Jamison*, 782 F.2d 1182, 1183-84 (4th Cir. 1986)); *see also Hudson v. Palmer*, 468 U.S. 517 (1984). Returning the mail to the sender does not amount to a constitutional claim, as there are available state remedies. *See*

contends that a prohibition from SMU inmates receiving by mail subscription magazines, newspapers, and books is unconstitutional.

Section 26 of SCDC Policy No. OP-22.12 governs the property that inmates housed in an SMU may possess. With respect to books and magazines, an SMU inmate is entitled to possession of his primary religious book such as a Bible or Qur'an. Further, an SMU inmate is permitted to possess one book or magazine that must be obtained through Library Services. By policy, the inmate is required to turn in one book or magazine in order to receive from Library Services a new book or magazine. Books and magazines are subject to request from Library Services using a "Book Request" form (Robert E. Ward aff. ¶ 3).

In assessing the constitutionality of a prison policy or regulation, the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987), held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Court noted four factors that are relevant to the *Turner* reasonableness inquiry: (1) whether the regulation is rationally related to a legitimate and neutral government objection; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials. *Id.* at 89-90. The burden of proof under the *Turner* analysis is not on the governmental entity; the burden is on the prisoner to disprove the validity of the prison regulation at issue. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

---

S.C. Code Ann. § 15-69-10, *et seq*. Because South Carolina has an adequate post-deprivation remedy for deprivation of property, the plaintiff's due process rights were not violated, even if the correctional officer lost or mishandled his personal property. *McIntyre v Portee*, 784 F.2d 566, 566-67 (4th Cir. 1986).

The defendants argue that property restrictions for SMU inmates at issue in this case, including the resulting prohibition on the receipt by mail of subscription magazines, newspapers, and books, satisfy the *Turner* test. This court agrees.

In his affidavit, Robert E. Ward, the SCDC Director of the Division of Operations, outlines several legitimate governmental objectives that are served by the current policy. First, the limitations on the amount of reading material provide an important method of promoting and maintaining order and discipline. Additionally, the policy creates an incentive or motivation for inmates placed in SMU to change their behavior to either obtain release from SMU or to avoid placement in SMU. As Ward explains, when an inmate is released into the general population, the property limitations imposed in SMU, including the restrictions on receipt of books and magazines through the mail, are lifted. Ward testifies that the limitation on books and magazines serves to promote better behavior and discipline within the SMU units (Ward aff. ¶ 4).

The SMU units are not designed to be a favored or comfortable housing assignment. The accompanying loss of privileges associated with an inmate's assignment to SMU also serves as an incentive and motivation for inmates in the general population to adjust their behavior to avoid an assignment to SMU. It serves as an incentive for inmates not to commit the types of offenses that will result in placement in lock-up. Thus, the restrictive environment in SMU fosters discipline and order for inmates both within SMU and outside the unit (*id.* ¶ 5).

In his affidavit, Mr. Ward also discusses other penological objectives served by the policy at issue. For instance, the limitation on the number of books and periodicals reduces a potential fire hazard in the unit. Moreover, by placing limitations of the number of books and periodicals, clutter is reduced and an SMU inmate consequently has less places to hide contraband including drugs and weapons. In addition, as Mr. Ward explained, the policy was adopted to serve as a deterrent for certain improper uses of paper

5

available from books, newspapers, and magazines. He notes a history of inmates using paper from books, magazines, and newspapers acquired through the mail to cover cell windows to conceal activity within the cell and to jam the locks to prevent entry into the cell and even to stop up toilets (*id.* ¶¶ 6-8).

Based upon the foregoing, the SMU policy at issue is rationally related to legitimate and neutral governmental objections. Furthermore, the other three *Turner* factors are also satisfied. With regard to the second factor, the enforcement of the policy does not cause the plaintiff to be deprived of all books, magazines, and reading material. To the contrary, the plaintiff is permitted to always have access to his primary religious book. Moreover, he is allowed one book or magazine from Library Services, which he can trade out for another.

The third factor under *Turner* is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. As the Supreme Court explained in *Beard v. Banks*, the third factor is satisfied because correctional officials would otherwise not have this method of rewarding good behavior and for punishing inappropriate behavior. 548 U.S. 521, 532-33 (2006).[2] Mr. Ward testifies that the types of incidents where paper is utilized, including setting fires or covering cell windows or jamming locks or stopping up the toilets, are all very disruptive to the units. Those incidents require greater manpower to address and increase the need for direct contact between the staff and inmates (such as the use of Force Cell Movement Team to remove an inmate from a cell) (Ward aff. ¶ 8). Consequently, the accommodation of the asserted right would have a negative impact on

---

[2] The Supreme Court in *Beard* concluded that a prison policy prohibiting inmates' access to newspapers, magazines, and photographs did not violate the First Amendment. In fact, the Court concluded that a justification offered for the policy – to provide an incentive to promote better inmate behaviour – satisfies the *Turner* standard.

both the day-to-day operation of an SMU unit but also detrimentally affect the allocation of resources.

Finally, it is necessary to assess whether the presence of ready alternatives undermines the reasonableness of the policy. "*Turner* does not impose a least-restrictive-alternative test, but asks instead whether the prisoner has pointed to some obvious regulatory alternative that fully accommodates the asserted right while not imposing more than a *de minimis* cost to the valid penological goal." *Overton*, 539 U.S. at 136. The Supreme Court described this as a "high standard" to meet. *Id*. Here, the plaintiff has offered no reasonable alternative to the principal penological interests served by the policy at issue. As the Supreme Court and other courts have recognized, restrictions on privileges are an effective "management technique" in controlling "high security prisoners who have few other privileges to lose." *Id.* at 134. The plaintiff offers no reasonable alternatives if this policy were eliminated in SMU.

Based upon the foregoing, the plaintiff's claim should be dismissed. Further, as the defendants note, the same regulation at issue here has been examined by several district judges in this district and found to be constitutional. See *Owens v. SCDC*, C.A. No. 8:09-278-GRA, 2009 WL 4807005, at *9 (D.S.C. 2009); *Peoples v. Burtt*, C.A. No. 8:07-2702-CMC-BHH, 2008 WL 2315865, at **4-6 (D.S.C. 2008)*; Koon v. Ozmint*, C.A. No. 8:06-2000-RBH, 2007 WL 1486067, at **3-5 (D.S.C. 2007); and *Corey v. Reich*, C.A. No. 0:02-2801-12, 2004 WL 3090234, at **9-10 (D.S.C. 2004). Thus, the plaintiff's challenge to SCDC Policy No. OP-22.12 should be dismissed on the same legal basis addressed in the aforementioned cases.

### *Legal Materials*

The plaintiff has not provided any evidence that he has been deprived of any legal materials nor that the alleged deprivation has prejudiced him. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v.*

7

*Smith*, 430 U.S. 817, 821 (1977).  In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation.  This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53.  A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).  Although the plaintiff claimed in his amended complaint that he has been denied access to the Georgetown Law Journal (comp. at 4), he has made no showing of any injury.

In his response to the motion for summary judgment, the plaintiff states that the defendants' arguments are "void" and appears to state that he does not wish to pursue a claim regarding his legal material (pl. resp. m.s.j. at 4 ("Plaintiff further states that although he is not raising the issue regarding legal material, if he was bringing forth this issue, this issue will have merit . . . .")).  Based upon the foregoing, summary judgment should be granted on this claim.

### *Deliberate Indifference to Medical Needs*

In his amended complaint, the plaintiff alleges "violation of his medical rights" (amended comp. at 1) and attached to his complaint a grievance in which he complained that he was not provided lotion by the medical staff for his "dry, scaly, irritated skin" (amended comp., ex. 1).  He contends that although he has not been diagnosed with either psoriasis or eczema, the medical staff should have performed tests or sent him to a specialist to determine whether he had these diseases.  The plaintiff notes that the nurses observed and documented his dry, scaly, itchy skin on numerous occasions (pl. resp. m.s.j. at 9-10 (citing med. enc.)).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration."

8

*Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The defendants submitted the affidavit of Nurse Practitioner Judy R. Rabon in support of their motion for summary judgment. According to Nurse Practitioner Rabon, the plaintiff has been examined on numerous occasions for his complaints of dry skin. She attests that his "dry skin is not a life threatening ailment, Plaintiff is not in any pain, Plaintiff is not in any danger, and it does not require any specialized medical treatment" (Rabon aff.

¶¶ 6-7). The medical records show that the plaintiff was provided hydrocortisone cream on March 2, 2008, for a rash (Rabon aff., ex. A at med. enc. 20). He complained again of a rash in September and October 2008 and was again give hydrocortisone cream (*id.*, ex. A at med. enc. 42, 43, 44). In November 2008, the plaintiff was given a different kind of soap because he complained the soap he was using made his skin dry and scaly (*id.*, ex. A at med. enc. 46). In January and April 2009, the plaintiff was given, at his request, ammonium lactate cream to use on his skin (*id.*, ex. A at med. enc. 50, 54). In June 2009, the plaintiff was told that it was not medically necessary for the SCDC to supply him with moisturizer (*id.*, ex. A at med. enc. 56). In December 2010, the plaintiff was given hydrocortisone cream at his request, for a rash (*id.*, ex. A at med. enc. 92). After another request by the plaintiff for the ammonium lactate cream, he was told in January 2011 that the ammonium lactate was "no longer formulary," and he should get lotion in the canteen (*id,*, ex. A at med. enc. 94). According to the plaintiff, in May 2011, Nurse Practitioner Rabon prescribed him selenium sulfide lotion for his skin (pl. resp. m.s.j. at 10).

The plaintiff has failed to show a serious medical need or that the defendants were deliberately indifferent to that need. The medical records described above show that the plaintiff was provided adequate treatment for his rashes and dry skin. In determining whether a prison official is deliberately indifferent to a prisoner's serious medical needs, the court may generally rely on medical records concerning examination and treatment of the prisoner. *Bennett v. Reed*, 534 F.Supp. 83, 87 (E.D. N.C. 1981). At most, the plaintiff's claim involves only a disagreement about the timing of and the type of medical treatment that he received from the medical staff. Based upon the foregoing, summary judgment should be granted on this claim.

***Inmate Grievance System***

To the extent the plaintiff that his constitutional rights have been violated because the inmate grievance system is not functioning as he would like, such claim fails. "The Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994)

(citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).  Even assuming that the defendants violated their own grievance procedures, such actions do not state a claim which is actionable under Section 1983. *See Brown v. Dodson*, 863 F.Supp. 284, 285 (W.D. Va.1994).

## *Respondeat Superior*

The plaintiff makes no allegation of personal involvement on the part of defendants Ozmint, the former Director of SCDC; Padula, the Warden at LCI; and Brooks, the Associate Warden at LCI.  In Section 1983 actions, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  To the extent he attempts to hold these defendants liable in their supervisory capacities, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29.  The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate:  (1)  the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2)  the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3)  there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.).  The plaintiff has failed to make such a showing here.

## *Eleventh Amendment Immunity*

To the extent the defendants are sued in their official capacities, they correctly assert that they are immune from suit in this court.  As arms of the state, they are entitled to sovereign immunity and are not "persons" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  Although a State may waive sovereign immunity, *Lapides v. Board of Regents*, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. *See* S.C. Code Ann. § 15-78-20(e).

*Qualified Immunity*

As an additional ground for dismissal, the defendants in their individual capacities are entitled to qualified immunity as described in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) and its progeny, as their conduct did not violate any constitutional right of the plaintiff.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the defendants' motions for summary judgment be granted (docs. 38, 64).

IT IS SO RECOMMENDED.

February 2, 2012                                         s/ Kevin F. McDonald
Greenville, South Carolina                          United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).